[S. F. No. 4998.   In Bank.—December 15, 1909.]

# CITY OF ARCATA (a Municipal Corporation), Appellant, v. J. E. GREEN et al., Respondents.

MUNICIPAL CORPORATIONS—LIMITATION ON POWERS.—A municipal corporation has only such powers as are expressly or by necessary implication conferred upon it by the constitution or by statutes passed under the constitution.

ID.—CORPORATIONS OF SIXTH CLASS—PERMIT FOR RAILROAD—RESTRICTIONS ON GRANT.—The power conferred on municipal corporations of the sixth class by section 862 of the Municipal Corporation Act (Stats. 1903, p. 93), to permit the laying of railroad tracks, etc., "under such restrictions as they deem proper," is legislative in its nature, and is not referable for its support to the power of making contracts. Unless the condition or restriction attached to the grant of the permit is within the legislative power of the municipality, it cannot be supported as a contract.

ID.—EXTRATERRITORIAL CONDITIONS—CONDITION THAT ROAD BE CONSTRUCTED BEYOND MUNICIPALITY INVALID—UNDERTAKING WITHOUT CONSIDERATION.—Where a municipal corporation of the sixth class grants the right to construct an electric railroad through such city on the condition that the grantees should, within certain periods, commence and complete the construction of their road between another place and such city and through such city, the condition is not severable. The construction to be undertaken is a single and complete thing, and the grant is an attempt by the municipality to grant a right upon condition that the entire contemplated road be constructed. Such an attempt of the municipality to exercise extraterritorial power vitiated the condition, and avoided, for want of consideration, an undertaking purporting to have been given by the grantees in consideration thereof.

ID.—ESTOPPEL TO DENY VALIDITY OF UNDERTAKING.—Under such circumstances, the grantees are not estopped to deny the validity of their undertaking.

APPEAL from a judgment of the Superior Court of Humboldt County.   G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

A. J. Monroe, for Appellant.

Coonan & Kehoe, for Respondents.

SLOSS, J.—The city of Arcata, a municipal corporation of the sixth class, seeks by this action to recover the sum of five thousand dollars on a bond or undertaking executed by the defendants Green and O'Brien as principals and the defendants Bull and Bair as sureties. A demurrer to the amended complaint having been sustained, the plaintiff declined to further amend, and appeals from the ensuing judgment in favor of defendants.

The amended complaint discloses these facts. In February, 1905, the board of trustees of the city of Arcata granted to Green and O'Brien the right to construct, maintain, and operate a single track electric railroad within and through the city of Arcata over certain streets by a route described. Section 2 of the ordinance declares that the grant is made upon certain conditions, relating to the manner of construction, the location of tracks, the maintenance of a portion of the street pavements by the grantees, the placing of poles and wires, equipment and operation of cars, and like matters. One of the conditions is that "all cars shall stop at street crossings whenever signalled by persons desiring to board or alight therefrom subject to regulations of the board of trustees." Section 5 provides that "the above rights and privileges are granted upon the express conditions that the work of constructing and fully equipping an electric railroad between the city of Eureka and the city of Arcata in said county of Humboldt, shall be commenced within nine months after the passage of this ordinance and the same completed and in operation between said Eureka and Arcata and through Arcata, within two years after the passage of this ordinance, . . ." By the terms of section 6, "the franchise and rights herein set forth are granted upon the express condition and consideration that said grantees shall, within the time hereinafter expressed (i. e. thirty days), make, execute and deliver to said city of Arcata, an undertaking in the penal sum of five thousand dollars, . . . , conditioned that if said grantees shall commence the work of constructing and equipping said railroad, and shall complete the same within the time and according to the provisions expressed in section 5 of this ordinance, then said undertaking to be of no effect; but that if they fail to commence said work and complete the same as expressed in said section 5, that they will forfeit.

and pay to said city of Arcata as liquidated damages the said sum of $5000." Section 7 requires the grantees, within thirty days, to file with the city clerk their written acceptance of the franchise and the conditions, and also within said time to file their undertaking. It is provided in section 12 that "nothing in this franchise shall be construed in any way to give said Messrs. Green and O'Brien, their heirs, executors and assigns, a franchise to maintain and conduct a street railroad within the limits of the said city of Arcata."

Within thirty days after the adoption of the ordinance, the grantees filed with the clerk of the board their written acceptance of the franchise, and also the undertaking upon which this action is based. This instrument incorporates, by reference, the entire ordinance, recites particularly the provisions of section 6, and is conditioned as required by that section. The amended complaint alleges that said bond was given voluntarily by the defendants, and that it was approved and accepted by the board of trustees. The grantees of the franchise "have wholly failed to commence the constructing and equipping of said railroad and to complete the same in and through the city of Arcata," within the time allowed by the ordinance, or at all. Alleging that it would be impracticable and extremely difficult to fix the actual damage resulting to the city of Arcata, the plaintiff asks judgment for the penal sum of the bond, five thousand dollars, as liquidated damages.

Without setting forth in further detail the allegations of the complaint, which is very full in its statements of all the steps leading up to the granting of the alleged franchise, it may be said that it affirmatively appears that there was no compliance with the conditions imposed by the act of March 11, 1901, entitled "An act providing for the sale of street railroad and other franchises in municipalities, and providing conditions for the granting of such franchises by legislative or other governing bodies, and repealing conflicting acts." (Stats. 1901, p. 265; amended, Stats. 1903, p. 90.) That statute provides, among other conditions, that certain franchises and privileges shall be granted only to the highest bidder, after advertising for bids. It also requires the successful bidder to file with the governing body of the municipality, a bond conditioned that the bidder will

perform all the terms and conditions of the franchise. There was no advertisement, nor was there any bid for the privilege here granted to Green and O'Brien, and it seems to be conceded by the appellant that, if such privilege was within the class of franchises and privileges described in the act, the ordinance granting it was void, and conferred no rights whatever upon the grantees. In that event, the bond would clearly be without consideration, and no recovery could be had thereon (unless on the ground of estoppel, to which we shall refer hereafter).

Much of the discussion in the briefs is devoted to a consideration of the nature of the right purported to be granted by the ordinance, and of the proper construction and effect of section 1 of the act of 1901, defining the franchises and privileges that must be advertised and sold to the highest bidder. The appellant urges that the right granted to Green and O'Brien was not covered by the act, but that the trustees had power, under subdivision 13 of section 862 of the Municipal Corporation Act, to pass the ordinance in question. The statute relied on (Stats. 1903, p. 93) gives to the trustees of cities of the sixth class power "to permit under such restrictions as they may deem proper, the laying of railroad tracks and the running of cars drawn by horses, steam or other power thereon."

For the purposes of this decision, we may assume that the appellant is right in this contention, and that the trustees had power, under the Municipal Corporation Act, to grant the right to lay tracks and operate a railroad over the streets of the city, without first advertising the right for sale, or selling it to the highest bidder. So assuming, however, we are still confronted with the question whether the conditions attached to the grant, and incorporated in the bond, were such as the city had the power to impose. In this connection, we do not overlook the allegation that the bond was voluntarily given by the appellants. But, reading the allegation in connection with the averments showing that the giving of such bond was a condition upon which the trustees, by their ordinance, made the grant of the franchise depend, it means no more than that the grantees accepted the franchise upon the only terms available to them. They consented to furnish the undertaking, but their consent was required

in order to enable them to take any benefits under the grant. As between private individuals or corporations, having a general power to make contracts, this would undoubtedly have constituted an agreement binding upon the parties to it. Here, however, one of the parties to the alleged contract was a municipal corporation. As such, it had only such powers as were expressly or by necessary implication conferred upon it by the constitution or by statutes passed under the constitution. (*Herzo* v. *San Francisco,* 33 Cal. 134; *Ex parte Frank,* 52 Cal. 608, [28 Am. Rep. 642]; *McCoy* v. *Briant,* 53 Cal. 250; *South Pasadena* v. *Terminal Railway Co.,* 109 Cal. 315, [41 Pac. 1093].) Section 862 of the Municipal Corporation Act, the only law relied on by appellant as the source of the power to grant the franchise, authorizes the city trustees to permit the laying of tracks, etc., "under such restrictions as they deem proper." Conditions may be attached to the grant. But the power to make such grant, and to impose conditions upon it is "legislative in its nature; . . . and is not referable for its support to the power of making contracts." (*South Pasadena* v. *Terminal Ry. Co.,* 109 Cal. 315, [41 Pac. 1093].). Unless the condition or "restriction" was one within the scope of the legislative power of the municipality, it cannot be supported as a contract. (*City of Aberdeen* v. *Honey,* 8 Wash. 251, [35 Pac. 1097].)

That it was not within such scope is, we think, a necessary conclusion from the doctrines declared in the South Pasadena case, already cited. There the plaintiff, a municipal corporation of the sixth class, had granted to a railroad company the right to construct and operate a steam railroad in certain streets of the city. Among the conditions attached to the grant was one limiting the rates of fare to be charged for travel between South Pasadena and Los Angeles. The ordinance declared that, upon failure of the grantee or its assigns to comply with any of the conditions, "all rights under this ordinance shall thereupon and immediately be forfeited, and this grant shall thereupon be null and void." The road was constructed under the license so granted, and was afterwards conveyed to the defendant. The rate of fare to and from Los Angeles having been raised beyond the limit fixed by the ordinance, the city sought to enjoin the operation of the road over the streets of South Pasadena. It was held that the

restriction upon rates of fare, applying as it did, to passage beyond the limits of the city, was void for the reason that it attempted to regulate matters outside of the city boundaries. "One of the limitations upon such ordinances," says the court, "is that they can have no extraterritorial force unless by express permission of the sovereign power."

The condition here imposed was that the grantees should, within certain periods, commence and complete the construction of their road between Eureka and Arcata and through Arcata. So far as this related to the construction between the two cities, it was as clearly extraterritorial as the provision in the South Pasadena case. It is equally clear that the condition is not severable, and that it cannot be held good as to that part of it which requires construction through the city of Arcata. What the municipality was seeking to bargain for was a road connecting the two cities. The right to run over the streets of Arcata was a mere incident to this scheme, as is strongly indicated by section 12 of the ordinance, which declares that it was not intended to grant a franchise for a street railroad in Arcata. We think there can be no doubt, on the whole ordinance, that the construction undertaken, i. e. from Eureka to Arcata and through Arcata, was a single and complete thing, and that the effort of the trustees was to grant a right upon condition that the entire contemplated road be constructed.

The appellant urges that the defendants, having received the grant which they sought, are estopped to deny the validity of their undertaking which they gave in consideration of such grant. But we think the doctrine of estoppel has no just application here. A party contracting with a city regarding a subject-matter within the scope of the city's powers may, where he has received the benefit of the contract, be precluded from asserting that the contract was not, on the part of the city, executed in the manner required by law. The doctrine, however, cannot be made to cover contracts entirely beyond the range of the municipal authority. "If this doctrine be established, then corporations, no matter how limited their powers, may make themselves omnipotent. They have only to induce persons to contract with them beyond the scope of their powers, and their very usurpations have the effect of conferring powers on them which the legislature has withheld.

A proposition so erroneous can scarcely need argument to overturn it. . . . We cannot apply the doctrine of estoppel to such a case as this." (*City Council v. Montgomery etc. Co.. 31 Ala. 76.*)

The judgment is affirmed.

Shaw, J., Angellotti, J., Melvin, J., Lorigan, J., and Henshaw, J., concurred.